FILED & ENTERED

AUG 14 2008

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY marshall  DEPUTY CLERK

1

2

3

4

5

6

7              **UNITED STATES BANKRUPTCY COURT**

8               **CENTRAL DISTRICT OF CALIFORNIA**

9              **SAN FERNANDO VALLEY DIVISION**

10

11  In re:                              Bk. No. SV 07-11493 MT

12  KENNETH W. KREISEL and              Chapter 7
    LAURENE M. KREISEL,
13                                       Adv. No. SV 08-01169 MT
                        Debtor(s).
14                                       **MEMORANDUM RE: COUNTER-**
                                         **DEFENDANTS' MOTION TO DISMISS**
15  _____     **ALL PURPORTED CLAIMS OF**
                                         **COUNTER-CLAIMANT KENNETH W.**
16  PM FACTORS, INC., A CALIFORNIA       **KREISEL'S COUNTER-CLAIM**
    CORPORATION DOING BUSINESS AS
    1ST PM FACTORS BANCORP, its
17  assignees and/or successors in interest,

18                        Plaintiff(s),
    v.
19
    KENNETH W. KREISEL and
20  LAURENE M. KREISEL,

21                        Defendant(s)

22
    **I. INTRODUCTION**:
23
            Counter-Defendants PM Factors, Inc., Stephen Perl, and Peter Perl
24
    (collectively known as "Counter-Defendants") filed a Notice of Motion and Motion
25

26

1   to Dismiss on May 29, 2008.  Counter-Defendants asked this Court to grant its

2   request for dismissal of all counterclaims brought by Counter-Claimant Kenneth

3   Kreisel ("Counter-Claimant") for: (1) lack of standing under 11 U.S.C. § 323; (2)

4   failure to follow pleading requirements for bringing a shareholder derivative suit

5   under Fed. R. Civ. P. 23.1; (3) failure to state a claim for which relief can be

6   granted under Fed. R. Civ. P. 12(b)(6); and (4) protection under Counter-

7   Defendants' assertions of its litigation and common interest privileges.  For the

8   reasons stated below, Counter-Defendants' motion is denied.  Counter-Claimant

9   is also granted leave to amend to correct the deficiencies of his counterclaim

10   pursuant to the guidance provided below.

11

12   **II. FACTS**:

13         Kenneth Kreisel and Laurene Kreisel (collectively known as "Debtors") filed a

14   chapter 11 bankruptcy on April 25, 2007, case no. SV 07-11493-MT.  The bankruptcy

15   case was converted to chapter 7 on November 29, 2007 and discharged on June 10,

16   2008.  Kenneth Kreisel ("Kreisel") is one of the founders of the corporation, M&K Sound

17   ("M&K").  M&K filed for chapter 7 bankruptcy on February 27, 2007, case no. SV 07-

18   10614-MT.  The M&K bankruptcy has yet to be closed.

19         On February 30, 2008, PM Factors, Inc. ("Plaintiff") commenced an adversary

20   proceeding against Debtors, adv. no. SV 08-01169-MT.  This adversary proceeding

21   involves two agreements.  The first related to a factoring agreement ("Factoring

22   Agreement"), entered into around March 9, 2005 between PM Factors and M&K, which

23   Kreisel signed.  PM Factors agreed that it would purchase goods for M&K and advance

24   funds to M&K on its purchase orders and invoices.  PM Factors also agreed to give

25

26

M&K access to certain portions of PM Factor's personal property for sales, subject to its

approval.  (Compl. ¶ 6).  The second agreement was an intercreditor agreement

("Intercreditor Agreement"), also entered into around March 9, 2005 between PM

Factors and M&K, which Kreisel also signed.  M&K agreed that goods purchased by PM

Factors for M&K would be held in trust, segregated, and immediately delivered to PM

Factors upon demand.  (Compl. ¶ 7).

PM Factors claims that M&K did not pay for certain inventory and goods

purchased by PM Factors after M&K received the goods.  PM Factors also claims

Kreisel intentionally engaged in fraudulent conduct, making material representations in

the Factoring Agreement and Intercreditor Agreement upon which PM Factors

detrimentally relied.  (Compl. ¶ 9).  In Plaintiff's Complaint to Determine Dischargeability

of Certain Debt ("Complaint"), Plaintiff seeks (1) a determination that Debtors' debt to

Plaintiff be non-dischargeable; (2) determinations of fraud, conversion, and

embezzlement in connection with Debtors' bankruptcy; (3) interest, attorneys' fees, and

other costs of suit; and (4) for such other and further relief as this court deems proper

and just.  (Compl. at 9).

On April 21, 2008, Debtors submitted answers to the complaint that denied all of

PM Factor's allegations.  (Answer to Compl. at 2-4).  Also on April 21, 2008, Kreisel filed

a Counter-Claim ("Counterclaim") in which he seeks against Counter-Defendants: (1)

joint and several judgments, compensatory damages, and punitive damages for claims

of (a) breach of contract, (b) fraud, (c) breach of fiduciary duty, (d) interference with

contract, and (e) interference with prospective economic advantage; (2) interest at the

legal rate on damages awarded; (3) attorneys' fees and costs incurred herein, and (4)

1    for such other relief as this court deems appropriate under the circumstances.

2    (Countercl. at 13-14).

3        Counter-Defendants filed a Motion to Dismiss All Purported Claims of Counter-

4    Claimant Kenneth W. Kreisel ("Motion to Dismiss") on May 29, 2008.  The Motion to

5    Dismiss seeks dismissal of the Counterclaim in its entirety.  On July 8, 2008, both

6    parties appeared before this Court for a hearing on the Motion to Dismiss.  Kreisel

7    responded to Counter-Defendant's lack of standing argument with the assertion that his

8    lack of standing had been cured because in M&K's bankruptcy, the chapter 7 trustee

9    had abandoned all claims against Counter-Defendants.  This assertion of standing, as

10   well as Counter-Defendants' remaining arguments in its Motion to Dismiss, are the

11   subject of this memorandum.

12

13   **III. DISCUSSION**:

14

15       Standard on Motion to Dismiss

16       Counter-Defendants request a motion to dismiss Counterclaim pursuant to Fed.

17   R. Civ. P. 12(b)(6).  Rule 12(b)(6) is incorporated into federal bankruptcy law by

18   reference under Fed. R. Bankr. P. 7012(b).  A Rule 12(b)(6) motion tests the legal

19   sufficiency of the claims asserted in the complaint.  See Fed. R. Civ. P. 12(b)(6).  A

20   Rule 12(b)(6) dismissal is proper only where there is either a "lack of cognizable legal

21   theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

22   Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  "While a complaint

23   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

24   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

25

26

1  requires more than labels and conclusions, and a formulaic recitation of a cause of

2  action's elements will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959

3  (2007).

4        In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court's review is

5  limited to the contents of the complaint.  Campanelli v. Bockrath, 100 F.3d 1476, 1479

6  (9th Cir. 1996); Allarcom Pay Television, Ltd. V. General Instrument Corp., 69 F.3d 381,

7  385 (9th Cir. 1995).  The court must accept all factual allegations pleaded in the

8  complaint as true, and must construe them and draw all reasonable inferences from

9  them in favor of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336,

10  337-38 (9th Cir. 1996).  However, it need not accept as true unreasonable inferences or

11  conclusory legal allegations cast in the form of factual allegations.  Western Mining

12  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

13        Debtors' Standing to Sue

14        *Standing to Sue in Bankruptcy*

15        Counter-Defendant's first argument for dismissal of the Counterclaim is that

16  Kreisel has no standing to sue because his standing was transferred to an appointed

17  trustee when he filed for chapter 7 bankruptcy.  The Bankruptcy Code establishes that

18  the trustee is the "representative of the estate" and thus "has the capacity to sue and be

19  sued."  11 U.S.C. § 323 (2008).  In Estate of Spiritos v. One San Bernardino County

20  Super. Ct., the court held that "11 U.S.C. § 323 vests the bankruptcy trustee with the

21  *exclusive right* to sue on behalf of the bankruptcy estate." 443 F.3d 1172, 1174 (9th Cir.

22  2006) (finding that a creditor of a bankruptcy estate does not have standing to file a

23  complaint on behalf of the estate unless permission from the trustee is obtained)

24

25

26

1    (emphasis added).  Additionally, the court in <u>In re Eisen</u> found that a chapter 7 debtor

2    had no standing to sue because when a chapter 7 trustee was appointed, he was

3    vested with all of the debtor's causes of action. 31 F.3d 1447, 1451 n.2 (9th Cir. 1994)

4    (finding that "as trustee, Moneymaker is vested with Eisen's [the debtor's] causes of

5    action, rendering Eisen with no standing to appeal").  That the estate could acquire

6    additional funds as a result of a debtor's complaint is irrelevant to whether the debtor

7    has standing to bring the matter before the court.  <u>Id.</u>

8        However, when a trustee abandons a claim, a debtor regains standing to bring

9    that claim because "upon abandonment, the debtor's interest in the property is restored

10   *nunc pro tunc* as of the filing of the bankruptcy petition."  <u>Catalano v. Comm'r of Internal</u>

11   <u>Revenue</u>, 279 F.3d 682, 685 (9th Cir. 2002); <u>see</u> <u>also</u> <u>Harris v. St. Louis Univ.</u>, 114 B.R.

12   647, 648 (E.D. Mo. 1990).  The Ninth Circuit describes abandonment in the bankruptcy

13   context as, "the formal relinquishment of the property at issue from the bankruptcy

14   estate."  <u>Catalano</u>, 279 F.3d at 685.  In the case at hand, Kreisel argues that, contrary to

15   Counter-Defendants' assertions, he does have standing to bring his Counterclaim

16   because all relevant causes of action were properly abandoned.

17

18        *Proper Abandonment of Claims by the Bankruptcy Estate*

19        Proper abandonment resulting in restoration of a debtor's interest in property

20   (and thus debtor's standing to bring a claim for that property) is governed by 11 U.S.C.

21   § 554.  First, claims must be scheduled in order to be abandoned.  Section 554(c)

22   states, "[u]less the court orders otherwise, any property *scheduled under 521(1) of this*

23   *title* ... not otherwise administered at the time of the closing of a case is abandoned to

24   the debtor."  11 U.S.C. § 554(c) (2008) (emphasis added).  <u>In Moreno v. Autozone, Inc.</u>,

25

26                                  ˘  6  ˘

the court stated that "a cause of action that was never disclosed in the bankruptcy petition cannot be abandoned."  2007 U.S. Dist. LEXIS 29432 at 11 (N.D. Cal. 2007) (holding that a debtor lacked standing to bring claims against her former employer because such claims were never scheduled and therefore could not be abandoned) (citation omitted).  In the case at hand, all causes of action named in the Counterclaim were listed in schedules submitted in both the Debtors' personal bankruptcy as well as the M&K bankruptcy.  Because these claims were scheduled, they can also be abandoned by the trustees in both bankruptcies.  See id.

Second, proper abandonment requires that the trustee give all creditors notice of his intent to abandon a claim.  § 554(a) states, "[a]fter notice and a hearing, the trustee may abandon any property of the state that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Fed. R. Bankr. P. 6007 implements § 554 by adding, "the trustee...shall give notice of a proposed abandonment or disposition of property to...all creditors..."  Fed. R. Bankr. P. 6007 (2006-2007).  The Ninth Circuit has therefore found, "there is no abandonment without notice to creditors."  Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 710 (9th Cir. 1986) (holding that trustee had not abandoned an emotional distress claim to the debtor because "[n]othing in the record indicates that creditors were notified of the trustee's intent to abandon...").

In the case at hand, the Counterclaim contains causes of action both on behalf of Kreisel as well as for his corporation, M&K.  When the Counterclaim was filed on April 21, 2008, however, neither the trustee in Kreisel's personal bankruptcy nor M&K's corporate bankruptcy had abandoned any claims pursuant to § 554(a).  Even though

1  the pertinent causes of action were recorded in the appropriate bankruptcy schedules,

2  standing to sue and be sued still transferred solely to the trustees when each Chapter 7

3  bankruptcy was filed.  See Estate of Spiritos v. One San Bernardino County Super. Ct.,

4  443 F.3d 1172, 1174 (9th Cir. 2006); In re Eisen, 31 F.3d 1447, 1451 n.2 (9th Cir.

5  1994).  Thus, neither Kreisel nor M&K had standing to sue as real parties in interest at

6  the time the Counterclaim was first filed.

7          *Curing Standing by Ratification*

8          The Ninth Circuit has allowed that a standing defect can be cured under Fed. R.

9  Civ. P. 17(a), which is incorporated into federal bankruptcy law by Fed. R. Bankr. P.

10  7017(a).  If a claimant without standing can obtain ratification from the real party in

11  interest, "such ratification...shall have the same effect as if the action had been

12  commenced in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  In

13  Dunmore v. U.S., Internal Revenue Serv., the Ninth Circuit found that a trustee's

14  abandonment of claims to a debtor one and a half years after the debtor lodged a

15  complaint without standing "could constitute the estate's ratification of [the debtor's]

16  lawsuit."  358 F.3d 1107, 1112 (9th Cir. 2004).

17

18          However, the Ninth Circuit has also found this ratification to be contingent upon

19  the claimant showing that the decision to sue in his own name was the result of "an

20  understandable mistake."  See Dunmore, 358 F.3d at 1112; U.S. v. CMA, Inc., 890 F.2d

21  1070, 1074 (9th Cir. 1989); Note of Advisory Committee on 1966 Amendment to Fed. R.

22  Civ. P. 17.  Whether there was "an understandable mistake and not a strategic decision"

23  is a question of fact that the bankruptcy court must determine.  Dunmore, 358 F.3d at

24  1112.  An understandable mistake is not present if the court can conclude that "there

25

26
                                        ˇ  8  ˇ

1    was no difficulty and no mistake in determining who was the proper party to bring suit."

2    Capobianco v. Trew, 248 B.R. 833, 839 (9th Cir. 2000).  For example, in Capobianco,

3    the court held that "an understandable mistake" was present because determining

4    whether a claim belonged to an individual or a corporation when it arose before the

5    incorporation was an "easy subject of confusion."  Id. at 840.  Contra CMA, Inc., 890

6    F.2d at 1074-75 (finding that an "understandable mistake" did not exist because

7    previous efforts by creditors to obtain an assignment of a subcontractor's claims against

8    a contractor demonstrated that the creditors were aware that the subcontractor was the

9    real party in interest).

10           In the case at hand, the facts initially do not seem to give rise to an

11   "understandable mistake," as interpreted by the court in Capobianco.  Kreisel filed

12   bankruptcy and his claims transferred to the chapter 7 trustee assigned to his case.

13   Similarly, M&K filed for bankruptcy and the corporation's claims also transferred to the

14   chapter 7 trustee assigned to its case.  In both bankruptcies, the transfer of causes of

15   action to the Chapter 7 trustees appears standard and uncomplicated.  Instead, the

16   confusion appears to be a result of a pro se debtor attempting to represent himself and

17   his corporation in this adversary proceeding.

18

19           Nevertheless, "modern decisions are inclined to be lenient when an honest

20   mistake has been made in choosing the party in whose name the action is to be filed."

21   Note of Advisory Committee on 1966 Amendment to Fed. R. Civ. P. 17.  Further, the

22   trustee in the M&K bankruptcy abandoned all outstanding claims to the debtor less than

23   two months after the Counterclaim was filed.  See Trustee's Motion to (A) Pay

24   Miscellaneous Court Costs et al. at ¶ 4, 2:16-19 [filed under case no. 07-10614-MT].

25

26

1  This suggests that Kreisel's filing was an "understandable mistake and not a strategic

2  decision." <u>Dunmore</u>, 358 F.3d at 1112.  Thus, for policy purposes, this court construes

3  "understandable mistake" broadly to encompass this confusion on the part of a pro se

4  debtor.

5      Having found an "understandable mistake" on the part of the Kreisel, his lack of

6  standing may therefore be cured by subsequent abandonment by the trustee under

7  <u>Dumore</u>.  358 F.3d at 1112.  On June 16, 2008, the trustee in the M&K bankruptcy

8  abandoned claims which included "causes of action against third parties, including

9  without limitation PM Factors, ACI and Stephen Perl."  <u>See</u> Trustee's Motion at ¶ 4,

10  2:16-19.  Kreisel's standing to bring claims on behalf of M&K still requires an

11  amendment to the pleadings asserting shareholder status.  However, with this

12  correction, these alleged counterclaims brought on behalf of M&K are cured by the

13  trustee's abandonment.

14      Regarding Kreisel's counterclaims in connection with his personal bankruptcy,

15  Debtors Kenneth Kreisel and Laurene Kreisel had their case discharged on June 10,

16  2008.  However, the bankruptcy case still remains open and none of the estate's claims

17  have been abandoned by the trustee.  Section 554(d) provides that, "[u]nless the court

18  orders otherwise, property of the estate that is not abandoned under this section and

19  that is not administered in the case remains the property of the state."  11 U.S.C. §

20  554(d).  Furthermore, even though § 554(b) allows that "[o]n request of a party in

21  interest and after notice and a hearing, the court *may* order the trustee to abandon any

22  property of the estate that is burdensome to the estate or that is of inconsequential

23  value and benefit to the estate," Kenneth Kreisel and Laurene Kreisel have not sought

24

25

26

abandonment of any of the estate's claims.  Id. (emphasis added).  In the absence of

any abandonment of claims in Kreisel's personal bankruptcy, standing to sue remains

solely with the trustee.  See also Estate of Spiritos, 443 F.3d at 1176 (finding that a

debtor who failed to request abandonment of certain claims of the bankruptcy estate did

not have standing to bring those claims.)  Therefore, unless Kreisel can obtain a court

order to abandon the personal claims brought in the Counterclaim, his standing is only

cured with regards to claims brought on behalf of M&K.

   Shareholder Status to Bring a Derivative Suit

   Counter-Defendant also argues that Kreisel still has no standing to bring his

Counterclaim because he failed to assert his shareholder status per Fed. R. Civ. P.

23.1, incorporated into federal bankruptcy law by Fed. R. Bankr. P. 7023.1.  See Mot. to

Dismiss at 12-13.  Rule 7023.1 explicitly states that a shareholder bringing a derivative

action must, in his complaint, "allege that the plaintiff was a shareholder or member at

the time of the transaction of which the plaintiff complains."  Fed. R. Bankr. P. 7023.1

(2008).  Kreisel implies shareholder status, but makes no explicit allegations that would

satisfy Rule 7023.1.  Therefore, Counter-Defendants correctly assert that Kreisel has

failed to follow the statutory pleading requirements in bringing a shareholder derivative

action.

   Fed. R. Civ. P. 12(b)(6)

   Claims Against PM Factor Employees/Representatives

   Counter-Defendants argue that claims against PM Factor directors Stephen Perl

and Peter Perl are improper because employees of a corporation "cannot be held liable

for tortuous [sic] acts of the corporation simply because of their official position"  Mot. to

1   Dismiss, at 13 ¶¶ 11-14.  U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc., states, "[d]irectors

2   or officers of a corporation do not incur personal liability for torts of the corporation

3   merely by reason of their official position."  1 Cal. 3d 586, 595 (1970).  However,

4   directors and officers *can* incur personal liability if they "participate in the wrong or

5   authorize or direct that it be done."  Id.   The Counterclaim asserts that both Stephen

6   Perl and Peter Perl individually participated in the wrongs alleged.  See Countercl., ¶

7   31, 7:17-24.  Because this court is only considering a 12(b)(6) motion to dismiss, all

8   factual allegations pleaded in the complaint are assumed true and construed in favor of

9   the non-moving party.  Cahill, 30 F.3d at 337-38.  Therefore, at this stage, Counter-

10  Defendants' argument that employees cannot be held liable for a corporation's tortious

11  acts is insufficient to warrant granting a motion to dismiss.

12          *Imaginary and Speculative Damages*

13          Counter-Defendants next argue that stated damages for all five claims put

14  forward in the Counterclaim are speculative and therefore must be dismissed.  See

15  Countercl. at 13-14.  In determining whether damages are speculative, this circuit has

16  "distinguished uncertain damage, which prevent[s] recovery, from an uncertain extent of

17  damage, which [does] not prevent recovery."  Allen v. United Food & Commercial

18  Workers Intern. Union, 43 F.3d 424, 427-28 (9th Cir. 1994) (quoting In re Multidistrict

19  Vehicle Air Pollution 591 F.2d 68, 73 (9th Cir. 1979).

20

21          Counter-Defendants argue that a plaintiff cannot recover loss of prospective

22  profits without evidence that such profits were reasonably certain to have accrued.

23  Engle v. Oroville, 47 Cal. Rptr.2d 630, 634 (App. Ct. 1965); Westside Ctr. Assoc. v.

24  Safeway Stores 23 Inc., 49 Cal. Rptr.2d 793, 808 (App. Ct. 1996).  Kreisel claimed

25

26

estimated damages proximately caused by breach of contract, fraud, breach of fiduciary duty, interference with contract, and interference with prospective economic advantage. Kreisel does not appear to claim lost "prospective profits" as Counter-Defendants suggests, but instead alleged damages already incurred.  See Countercl. at 13-14. While Kreisel's stated damages of $5M may seem arbitrary, in this case, Counter-Defendants nonetheless appear to be confusing "uncertain damage" with "uncertain extent of damage."  Therefore, on the issue of damages alone, Counter-Defendants have not presented arguments that compel dismissal of the Counterclaim.

*Breach of Contract Claim*

A proper claim for breach of contract must allege (1) the existence of an agreement, (2) consideration for the agreement, (3) performance by the claimant, (4) breach by the defendant, and (5) damages proximately caused by the breach.  In re Sahuaro Petroleum & Asphalt Company, 33 Fed. Appx. 896, 898 (9th Cir. 2002). Counter-Defendants correctly argue that the Counterclaim failed to allege the existence of a contract that was breached and caused damages, some of the "usual breach of contract elements" required for a complaint to survive past the pleading stage.  Id. Nowhere does Counterclaim establish the existence of a contract between Kreisel and Stephen Perl and/or Peter Perl.  The only contracts identified are a factoring agreement between M&K and PM Factors and an agreement by which Kreisel purportedly personally guaranteed the M&K-PMF factoring agreement.  Kreisel argues that Counter-Defendants breached an implied covenant of good faith and fair dealing in its guaranty agreement, but is unable to allege any actual damages since Counter-Claimant never ultimately transferred stock to Stephen Perl or Peter Perl nor did he allege that he made

1    any guaranty payments to PM Factors.  Kreisel's other allegation that "Perl, Peter, and

2    PMF breached their several agreements to provide funding to M&K" by allegedly

3    diverting M&K's shipments is also improperly pleaded.  The Counterclaim fails to allege

4    any performance on the part of himself or M&K that would indicate the existence of such

5    an agreement and damages caused by any of the named Counter-Defendants.

6        *Fraud Claim*

7            A proper claim for fraud must include allegations that every element of fraud has

8    been met: The claimant must allege (1) a misrepresentation, (2) knowledge of its falsity,

9    (3) intent by the defendant to defraud, (4) detrimental and justifiable reliance by

10   claimant, and (5) resulting damage sustained by the claimant.  Roberts v. Ball, Hunt,

11   Hart, Brown, & Baerwitz, 57 Cal. App.3d 104, 109 (2nd Dist. 1976).  Furthermore,

12   "[e]very element of the cause of action for fraud must be alleged in the proper manner

13   and the facts constituting the fraud must be alleged with sufficient specificity to allow

14   defendant to understand fully the nature of the charge made." Id. (citing Hills Trans. Co.

15   v. Southwest Forest Indus., Inc., 72 Cal. Rptr. 441 (1968).  This entails a showing of

16   "how, when, where, to whom, and by what means the representations were tendered."

17   Stansfield v. Starkey, 220 Cal. App.3d 59, 73 (1990).

18

19           Counter-Defendants also correctly note that Kreisel's claim for fraud is improperly

20   pleaded because at best, the Counterclaim identifies oral promises between PM Factors

21   and M&K to provide financing.  The timing of such representations is not indicated nor

22   does the Counterclaim identify the individuals who made the representations.  Even if

23   these oral promises were misrepresentations known to be false by Counter-Defendants,

24   and were put forward with an intent to defraud, Kreisel has also failed to allege actual

25

26

justifiable detrimental reliance on his own part or damages incurred directly as a result

of any Counter-Defendants' actions.  Kreisel alleges that, despite admitting that M&K

had been sustaining losses, he decided to "abandon other funding or operational

alternatives" simply because he was convinced by Counter-Defendants to do so.

Kreisel also states that "as a direct and proximate result of the Defendant's

representations and false promises...[Kreisel] has suffered and continues to suffer

general and special damages..."  See Countercl., ¶ 44, 10:19-22.  Although the

Counterclaim's vocabulary asserts causation, there are no allegations that indicate

actual damages proximately caused by actual reliance on Counter-Defendants' alleged

misrepresentations.

*Whether the breach of fiduciary duty counterclaim was properly pled*

A proper claim for breach of fiduciary duty must establish (1) existence of a

fiduciary duty, (2) breach of the fiduciary duty, and (3) damages proximately caused by

the breach.  Maglica v. Maglica, 78 Cal. Rptr.2d 101, 103 (Ct. App. 1998).  Here,

Counter-Defendants also correctly argue that the Counterclaim fails to allege the

existence of a valid fiduciary relationship between Kreisel and Counter-Defendants.  By

all facts alleged in the Counterclaim, Counter-Defendants' relationship to Kreisel is that

of a lender to a loan customer.  In Price v. Wells Fargo Bank, the court found that "[a]

debt is not a trust and there is not a fiduciary relation between debtor and creditor as

such.  The same principle should apply with even greater clarity to the relationship

between a bank and its loan customers." 213 Cal. App. 3d 465, 261 (1989) (internal

citations omitted).  Price involved a group of ranchers who claimed a breach of fiduciary

duty against a bank after the bank initiated foreclosure proceedings when the ranchers

1  defaulted on their loans.  Id.  The court found that fiduciary relationships do not exist

2  between a bank and its loan customers.  Id.

3      Here, Kreisel alleges that Counter-Defendants had a fiduciary relationship to

4  M&K, but fails to allege that the relationship between the two companies was anything

5  more than a creditor-debtor arrangement.  In the absence of any alleged relationship

6  that could give rise to fiduciary duties, Counter-Defendants are correct in arguing that

7  the breach of fiduciary duty claim was improperly pleaded.

8      *Interference with Contract Claim*

9      To prevail on an intentional interference with contract claim, Kreisel needs to

10  allege that (1) a valid contract existed between himself and a third party, (2) Counter-

11  Defendant's knew of the contract, (3) Counter-Defendants engaged in intentional acts

12  that were intended to induce the breach or disruption of the contractual relationship, (4)

13  actual breach or disruption of the contract actually occurred, and (5) actual damages

14  resulted.  Bank of New York v. Fremont Gen. Corp., 523 F.3d 902, 909 (9th Cir. 2007)

15  (citations omitted).

16

17      Kreisel puts forward two alleged instances of Counter-Defendants' interference

18  with contract.  First, he alleges that Counter-Defendants knew of M&K's valid contract

19  with a supplier, ACI, to ship product to M&K's warehouses.  He then alleges that

20  Counter-Defendants intentionally engaged in negotiations with ACI to disrupt the M&K-

21  ACI contract and were ultimately successful when ACI began diverting shipments

22  originally intended for M&K to PM Factor warehouses.  He alleges that the damages

23  incurred were monetary losses that stemmed from M&K's inability to inspect product

24  and fulfill customer orders.  See Countercl. at 12-13.  Because Kreisel sufficiently

25

26

1
2
3

alleges each element of an interference with contract claim, Counter-Defendants'
motion to dismiss should be denied with respect to M&K's shipment agreement with
ACI.

4
5
6
7
8
9
10
11
12
13

Second, Kreisel alleges that Counter-Defendants made representations to customers with whom M&K had pre-existing contracts to supply product. He alleges that Counter-Defendants purposely approached these customers and engaged in the intentional act of suggesting there was an impending change in ownership of M&K. He alleges that after receiving this information from Counter-Defendants, M&K customers canceled purchase orders, causing damage to the business. See id. Because the Counterclaim sufficiently alleges each element of an interference with contract claim, Counter-Defendants' motion to dismiss should also be denied with regards to M&K's contract with its customers.

14

*Interference with Prospective Economic Advantage Claim*

15
16
17
18
19
20
21
22
23
24
25

To properly bring a claim for interference with prospective economic advantage, Kreisel must plead intentional acts on the part of Counter-Defendants that were designed to divert or disrupt the business relationship in a manner that falls outside fair competition practices. See TransWorld Airlines, Inc. v. American Coupon Exch., Inc., 913 F.2d 676, 690 (9th Cir. 1990); Settimo Assocs. V. Environ Sys., Inc., 14 Cal. App. 4th 842, 845 (1993). The elements of this cause of action are: "(1) the existence of a prospective business relationship containing the probability of future economic rewards for plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts by defendant designed to disrupt the relationship; (4) actual causation, and, (5) damages to plaintiff proximately caused by defendant's conduct." Settimo, 14

26

Cal. App. 4th at 845 (citing <u>Buckaloo v. Johnson</u>, 122 Cal. Rptr. 745, 537 P.2d 865

(1975)).

The Counterclaim alleges interference with prospective economic advantage that

resulted in loss of customers and the devaluation of his stock ownership in M&K.

However, Counter-Defendants' argument that the claim was improperly pleaded is

correct because Kreisel fails to specify the intentional acts on the part of Counter-

Defendants that actually and proximately caused the damages he alleges.

<u>Litigation and Common Interest Privileges</u>

*Litigation Privilege*

Counter-Defendants argue that the litigation privilege bars all of causes of action

brought in the Counterclaim because Counter-Defendants communicated with third

parties while they were asserting PM Factor's rights.  Cal. Civ. Code § 47(b) provides

for the litigation privilege as follows: A publication or broadcast protected by the litigation

privilege is one made in any (1) legislative proceeding, (2) judicial proceeding, (3) in any

other official proceeding authorized by law, or (4) in the initiation or course of any other

proceeding authorized by law and reviewable pursuant to Chapter 2 of Title 1 of Part 3

of the Code of Civil Procedure.  Cal. Civ. Code § 47(b) (2008).  "The principal purpose

of section 47(b) is to afford litigants and witnesses the utmost freedom of access to the

courts without fear of being harassed subsequently by derivative tort actions."  <u>Nguyen</u>

<u>v. Proton Tech. Corp.</u>, 69 Cal. App.4th 140, 146 (1999).  For example, in <u>Silberg v.</u>

<u>Anderson</u> the California Supreme Court found the litigation privilege to apply to

statements made "in the context of a judicial proceeding, [that] were logically related to

1   the action, played an integral role in the proceeding, and were made by one of the

2   participants about an authorized participant." 786 P.2d 365, 374 (Cal. 1990).

3         However in the case at hand, Counter-Defendants failed to show how the

4   litigation privilege bars the causes of action alleged in the Counterclaim, which are all

5   predicated upon the same facts that underlie the original causes of action PM Factors

6   claimed when it commenced its adversary proceeding against Kenneth Kreisel and

7   Laurene Kreisel.  As Nguyen asserts, the purpose of § 47(b) is to bar "*derivative* tort

8   actions," not necessarily those brought to counterclaim an original complaint.  69 Cal.

9   App.4th at 146 (emphasis added).  Therefore, Counter-Defendants' motion to dismiss

10  counterclaims based upon the application of the litigation privilege is denied.

11        *Common Interest Privilege*

12        Counter-Defendants further argue that the common interest privilege also bars all

13  of Kreisel's counterclaims because Counter-Defendants communicated with third

14  parties while asserting PM Factor's rights.  "The common interest privilege applies

15  where (1) the communication was made by separate parties in the course of a matter of

16  common interest, (2) the communication was designed to further that effort, and (3) the

17  privilege has not been waived."  Value Prop. Trust v. Zim Co. (In re Mortgage & Realty

18  Trust) 212 B.R. 649, 653 (C.D. Cal. 1997) (citing In re Bevill, Bresler & Schulman Asset

19  Mgmt. Corp., 805 F.2d 120, 126 (3d Cir. 1986); Griffith v. Davis, 161 F.R.D. 687, 692

20  (C.D. Cal. 1995).

21

22        Counter-Defendants argue that as assignee to M&K's accounts receivables, it

23  was entitled to communicate with M&K's customers in the course of protecting PM

24  Factor's rights.  However, it is questionable that the communication between PM

25

26

Factors and M&K customers can be characterized as "communication...designed to

further that [matter of common interest]." Id.  While PM Factors was an assignee to

M&K's accounts receivables, it does not necessarily follow that all of PM Factor's

communications with M&K customers were protected by the common interest privilege.

In fact, Kreisel alleges that Counter-Defendants had very different interests as to

operation of M&K's business.  Further, courts have found that "[t]he common interest

privilege is an extension of the attorney-client privilege and work product doctrine."

Burroughs v. DeNardi, 167 F.R.D. 680, 685 (S.D. Cal. 1986).  Given this underlying

purpose for the common interest privilege and Kreisel's allegations denying the

presence of a common interest, it is inappropriate to apply the bar.


**IV. CONCLUSION**:

        This Court denies Counter-Defendants' Motion to Dismiss on the grounds that

Kreisel is found to have standing to bring his Counterclaim.  While Kreisel did not have

standing to sue at the time the Counterclaim was filed, his lack of standing as the real

party in interest was cured by the trustee's subsequent abandonment of claims in the

M&K bankruptcy.  Dunmore, 358 F.3d at 1112.  This Court also finds that, for the

reasons above, Counter-Defendants' assertions of a litigation privilege and common

interest privilege are inapplicable to the Counterclaim.

        The Court finds, however, that Kreisel does not have standing to bring claims on

behalf of himself because the trustee has not abandoned any claims in the Kenneth

Kreisel and Laurene Kreisel personal bankruptcy.  Kreisel has also failed to follow the

pleading requirements for bringing a shareholder derivative suit as well as for bringing

1  claims for breach of contract, fraud, fiduciary duty, and interference with prospective

2  economic advantage.  As this Motion to Dismiss has been brought at the Rule 12(b)(6)

3  stage, this Court grants Kreisel leave to amend within 30 days to plead the additional

4  facts required to correct the deficiencies noted in the discussion above should such

5  facts apply.  If no amended counterclaim is filed within 30 days of service of this

6  Memorandum, those causes of action are dismissed.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23  DATED: August 14, 2008

_____
United States Bankruptcy Judge

24

25

26

1

## SERVICE LIST FOR ENTERED ORDER

| SERVED ELECTRONICALLY | SERVED BY U.S. MAIL |
|---|---|
| **Andrew A Goodman**<br>200 N Westlake Blvd Ste 202<br>Westlake Village, CA 91362<br>agoodman@andyglaw.com<br><br>**Cassandra J Richey**<br>Polk Prober & Raphael ALC<br>20750 Ventura Blvd Ste 100<br>Woodland Hills, CA 91364<br>cmartin@pprlaw.net | **PM Factors, Inc. dba 1st PM Factors Bancorp**<br>Law Offices of Scott E. Shapiro, P.C.<br>P. O. Box 1488<br>Culver City, CA 90232<br><br>**Kenneth W. Kreisel**<br>**Laurene Kreisel**<br>5409 Castle Knoll Road<br>La Canada Flintridge, CA 91011<br><br>**Scott E Shapiro, Esq**<br>17337 Ventura Blvd Ste 200<br>Encino, CA 91316 |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26